IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| V. CASSEL ADAMSON, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:13CV214–HEH |
| ) | |
| COLUMBIA GAS ) | |
| TRANSMISSION, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Granting in Part and Denying in Part Defendant's Motion for Partial Dismissal)

This Matter is before the Court on Defendant's Motion for Partial Dismissal (ECF No. 3), filed on April 9, 2013. Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions have now been adequately presented, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Defendant's Motion for Partial Dismissal will be granted in part and denied in part.

### I. BACKGROUND

Plaintiff V. Cassel Adamson ("Adamson") is the owner of a parcel of land located in Goochland County, Virginia. (Am. Compl. ¶ 3, ECF No. 17.) That parcel of land is subject to a natural gas transmission easement ("Easement"), which was first granted in 1956 by a Right of Way Agreement ("ROW Agreement") and is now held by Columbia Gas Transmission, LLC ("Columbia"). (*Id.* at ¶ 4.) Under the ROW Agreement, the holder of

the Easement may lay, maintain, operate and remove pipelines for the transportation of natural gas and petroleum products. (ECF No. 8-2.)

The ROW Agreement, however, is silent as to the width of the Easement. Adamson claims that the Easement was "clearly delineated at 40 feet by the growth of natural trees that lined [its] east and west sides . . . until those trees were deliberately cut by Columbia." (Am. Compl. ¶ 8.) He adds that the first grantee and all successors in interest, including Columbia, had "successfully operated and maintained the pipeline or pipelines since the beginning of the Easement within the 40 foot range between the growth of trees." (*Id.*)

In February 2007, Columbia allegedly entered Adamson's property and announced that it was going to clear an additional 20 feet around the Easement, expanding its width to 60 feet. (*Id.* at ¶ 10.) Adamson claims that he objected to the clearing of the trees and the expansion of the Easement as unnecessary and outside the scope of the Easement. (*Id.* at ¶ 11.) Columbia reportedly asserted that it needed a broader clearing to conduct aerial surveillance of the pipelines and to comply with federal directives. (*Id.* at ¶¶ 13, 16.)

Again, in 2008, Columbia, through its counsel, allegedly informed Adamson of its intention to widen the Easement. (*Id.* at ¶ 28.) At the time, Adamson asserts, Columbia claimed it had the right to expand the Easement, but simultaneously requested permission to enter the property to remove the trees. (*Id.*) Adamson alleges that he "refused entry to Columbia . . . absent some document or court order determining they had a right to enter [his property] to cut trees and expand the width beyond the 40 feet . . . used since 1956." (*Id.* at ¶ 29.)

Adamson further alleges that after he refused to allow its entry, "Columbia, through its representative, was threatening, abusive, and intimidating to [him], his wife, and young children, in demanding permission to cut trees from [his property], and even threatened to expand the Easement to include a portion of [his] house . . . if [he] did not [allow] the Easement to be cleared to a width of 60 feet." (*Id.* at ¶ 31.) Columbia's representative also reportedly "threatened that they would go upon [his property] and cut any trees they wanted to cut, claiming the original Easement gave them the right to take as much of [his property] as they wanted . . . ." (*Id.* at ¶ 32.)

Despite Adamson's repeated denials of Columbia's requests to enter his property, Columbia allegedly entered the property and began clearing trees without notice or permission on or about September 10, 2009. (*Id.* at ¶¶ 33–34.) Adamson was apparently not on the property at the time. (*Id.* at 34.) His wife, who was present, reportedly called the Goochland County Sheriff's Office, but the responding deputy refused to intervene, stating that it was a civil matter. (*Id.* at ¶ 35.) Adamson asserts that the cutting was done in a quick and haphazard fashion, causing damage to his property. (*Id.* at ¶ 34.)

Adamson filed a Complaint in the Circuit Court for Goochland County on March 11, 2013. Columbia removed the case to this Court on April 4, 2013. (ECF No. 1.) Five days later, Columbia filed a Motion for Partial Dismissal and a Motion to Strike. On May 2, 2013, this Court granted the Motion to Strike and ordered Adamson to file an Amended Complaint. (ECF No. 14.) Adamson filed his Amended Complaint on May 10, 2013. (ECF No. 17.)

Columbia seeks dismissal of Adamson's claims for (1) attorneys' fees and costs, (2) compensation for his time, and (3) punitive damages. In his response, Adamson has stated that he will no longer pursue the claims for attorneys' fees, costs, and compensation for his time. (Mem. Opp. Mot. Dismiss 3, ECF No. 9.) Thus, with respect to the claims for attorneys' fees, costs, and compensation for his time, the Motion for Partial Dismissal is unopposed and will be granted. That leaves the Court with one issue to consider—whether to dismiss the punitive damages claim.[1] For the following reasons, the Court will not dismiss the punitive damages claim at this time.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint only need contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of

---

[1] Both parties submitted their briefs prior to the filing of the Amended Complaint, and all citations in the briefs refer to the first Complaint filed in the Goochland County Circuit Court. The Amended Complaint reflects the Court's May 2, 2013 Order that certain paragraphs be stricken and contains slightly different language in its demand for damages. However, the allegations made in the two complaints are identical in all other respects. Accordingly, the Court will examine the allegations in the Amended Complaint to determine whether they suffice to state a claim for punitive damages.

4

entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the alleged facts support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, when viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court also "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (per curiam).

### III. ANALYSIS

Columbia argues that this case concerns a contract dispute, and not a trespass action. Furthermore, Columbia contends that Adamson's claim for punitive damages "should be dismissed because [he] has not alleged any willful or wanton conduct, as is required for any punitive damages claim." (Mem. Supp. Mot. Dismiss 9, ECF No. 4.) According to Columbia, Adamson has only alleged in conclusory fashion that "Columbia acted in a wanton, willful, threatening, and abusive manner" and "has failed to plead facts tending to support [this allegation]." (*Id.*) Columbia claims that it has consistently asserted the right to expand the Easement to 60 feet and that this right has clear support in the land records,

5

which have been incorporated by reference. (*Id.* at 9–11.) Columbia concludes that because it has consistently disputed the width of the Easement, it could not have consciously disregarded his rights, and thus, could not have engaged in willful or wanton conduct entitling Adamson to punitive damages. (*Id.* at 9.)

Adamson maintains that he has alleged facts sufficient to show that Columbia intentionally trespassed and did so in a malicious, willful, or wanton way. The Amended Complaint asserts that Columbia knew it lacked permission to enter the property and cut down trees, but elected to do so anyway. (Am. Compl. ¶¶ 33–34.) It further states that Columbia repeatedly sought permission to clear an additional 20 feet of trees between 2007 and 2009. (*Id.* at ¶¶ 10, 28, 34.) The Amended Complaint adds that Columbia threatened to expand the Easement without his permission, even beyond the 60 feet to which it has claimed a right. (*Id.* at ¶¶31–32.) Also of note, Columbia has not disputed that it intentionally entered his property and cleared trees. (Mem. Opp. Mot. Dismiss 4.) In light of these allegations of malicious conduct, Adamson maintains that he has recited facts sufficient to support a claim for punitive damages.

This Court has previously determined that "Virginia law limits [claims for punitive damages] to allegations involving misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others." *Level 3 Communications, LLC v. William T. Cantrell, Inc.*, 2012 U.S. Dist. LEXIS 63346, *7–8 (E.D. Va. May 4, 2012) (citing *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 345 (2003); *C.T.L. ex rel. Cassidy v. People Inc. of Southwest Virginia*, 2005 WL 2811785 (W.D. Va. Oct. 27, 2005)). Columbia contends that Adamson has only offered a recitation of these elements. However, when read

in the light most favorable to Adamson, the Amended Complaint alleges sufficient facts for the punitive damages claim to survive Rule 12(b)(6) review.

Columbia's argument rests on an unstated assumption that the alleged trespass only entailed the expansion of the Easement from 40 feet to 60 feet. This assumption is critical because Columbia argues that it operated under the belief that the Easement was 60 feet wide and thus, it could not have acted maliciously or wantonly in seeking to expand it to 60 feet. If the alleged trespass and injury occurred outside of the disputed area, however, Columbia's claimed belief that it was acting within its rights under the ROW Agreement is unavailing.

When the Amended Complaint is read in the light most favorable to Adamson—as is required at this stage of the proceedings—the allegations do not support the assumption that the trespass only concerned the 20 foot-wide swath of land comprising the disputed portion of the Easement. Adamson claims that Columbia "threatened to expand the Easement to include a portion of [his] house . . . if [he] did not give permission allowing the Easement to be cleared to a width of 60 feet." (Am. Compl. ¶ 31.) Columbia also reportedly threatened that they "would go upon [his property] and cut any trees they wanted to cut, claiming the original Easement gave them the right to take as much of the [property] as they wanted and that the Easement was as wide as they wanted it to be." (*Id.* at ¶ 32.) And while the Amended Complaint states that Columbia "increased the historic area of the Easement to 60 feet in width," it never specifies that the trespass and damages were limited only to the property comprising disputed portion of the Easement. (*Id.* at ¶ 36.) The Amended Complaint clearly states that Adamson repeatedly denied Columbia's requests for

7

permission to enter the land and that on several occasions Columbia threatened to expand the Easement without his permission. As well, it alleges that Columbia repeatedly trespassed on his property, that Columbia cleared trees on the property without notice or permission, and that these intrusions damaged his property.

When viewed in the light most favorable to Adamson, reasonable persons could differ as to whether Columbia's conduct was malicious or in conscious disregard of his rights. In short, Adamson has alleged facts from which the Court can reasonably infer that Columbia's trespass was willful, wanton, or negligent. Accordingly, the Court cannot conclude that the facts set forth in the Amended Complaint fail to state a plausible cause of action, and dismissal of the punitive damages claim would be improper at this juncture.

## IV. CONCLUSION

For the foregoing reasons, Columbia's Motion for Partial Dismissal will be granted in part and denied in part, and an appropriate Order will accompany this Memorandum Opinion. Determination of whether evidence supports the claim for punitive damages will have to wait until summary judgment.

/s/
Henry E. Hudson
United States District Judge

Date: May 16 2013
Richmond, VA

8