IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| V. CASSEL ADAMSON, III, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 3:13CV214–HEH |
| | ) |
| COLUMBIA GAS TRANSMISSION, LLC, | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

**MEMORANDUM OPINION**
(Cross Motions for Summary Judgment)

This is, in essence, a dispute over the dimensions of a natural gas pipeline right of way passing through residential property in Goochland County, Virginia. The easement in question is the product of a right of way agreement granted by prior owners of V. Cassel Adamson, III's ("Adamson") property to Commonwealth Natural Gas Corporation ("Commonwealth"), Columbia Gas Transmission, LLC's ("Columbia") predecessor in interest. The right of way, recorded in 1956, neither specifies its width nor describes a designated cleared area, but recites the purpose for which the easement was granted. In subsequent years, Columbia installed two high pressure, below-grade natural gas pipelines in that area. The pipelines are major sources of natural gas for the entire Tidewater region of Virginia.

This case evolved from Columbia's entry onto the easement area of Adamson's property for the purpose of clearing encroaching trees and undergrowth purportedly to enable maintenance and inspection. Adamson contends that the width of Columbia's

clearing was beyond the dimensions of the right of way easement and seeks damages for common law trespass. Columbia counters that its entry onto Adamson's property and removal of foliage was within the dedicated right of way. To vindicate its claim, Columbia seeks declaratory judgment defining the current width of the right of way.

This case is presently before the Court on cross motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. Each claim turns on the construction of the right of way agreement and the legal significance of events following its execution. Each party, however, urges the Court to adopt a different theory of analysis. Both parties have filed detailed memoranda of law supporting their respective positions, accompanied by pertinent land records. The Court heard oral argument on November 7, 2013.

The record reveals that on or about April 20, 1956, Commonwealth entered into a right of way agreement (the "Agreement") with Frederick Bennett McBride and Penelope A. McBride (the "McBrides"), predecessors in titled to the property currently owned by Adamson. The Agreement was recorded among the land records of Goochland County, on or about May 2, 1956. The Agreement, in pertinent part, grants to Commonwealth, its successors and assigns, "the right to la[y], maintain, operate and remove a pipe line, or pipe lines for the transportation of gas, oil, petroleum products, or any other liquids, gases or substances which can be transported through a pipe line, through our lands in Dover District, Goochland County . . . with the right of ingress and egress to and from and through same." (Pl.'s Mem. Support Mot. Summ. J., Ex. A, ECF No. 35 (hereinafter "Agreement").) The Agreement also states that "[t]he Grantee is further granted the right

2

at any time to lay additional lines of pipe approximately parallel to the first line herein . . . ." *Id.*

In 1957, Commonwealth installed the first natural gas pipeline through the easement. The pipeline designated VM 108 was 18 inches in diameter. There is no evidence in the record of the dimensions of the clearing at that time.

In 1969, the McBrides conveyed a large parcel of land, including that currently owned by Adamson, to the Partridge Hill Company. The plat recorded with the Partridge Hill deed reflects an easement sixty feet wide. (Am. Countercl., Exs. 3, 4, ECF No. 28.) Partridge Hill apparently developed the land into a residential community.

In 1992, a second parallel pipeline was laid within the dedicated right of way.[1] This pipeline, VM 109, was 24 inches in diameter. Based on the testimony of Adamson's neighbor, Robert R. Pounders ("Pounders"), who was periodically present during the installation of the second pipeline in 1992, the cleared area comprising the right of way was approximately forty feet in width at that time. (Pl.'s Mem. Support Mot. Summ. J., Ex. B at 16:15–17: 7 (hereinafter "Pounders Tr.").) Pounders' estimate is based on unrecorded past recollection without measurement or specific knowledge of property lines. (Pounders Tr. 18:8–23.)

---

[1] In his sworn declaration, Richard Charvet, a fifteen-year employee of Columbia, stated that VM 109, installed in 1992, is "located outside the 40 feet wide area that Adamson claims comprises the Easement." (Def.'s Mem. Opp'n Mot. Summ. J., Ex. 1 at ¶ 12, ECF No. 44 (hereinafter "Charvet Decl.").) But even if Columbia elected to place the second pipeline within a forty foot area, it would not preclude full use of the sixty feet if permitted under the original easement or modification thereto. *Lynchburg v. Smith*, 166 Va. 364, 373, 186 S.E. 51, 55 (1936).

Adamson and his wife purchased two contiguous parcels of property in 2005 and 2007 within the Partridge Hill development on which they constructed a home. Both deeds expressly state that the land is subject to applicable easements, conditions, restrictions and agreements of record. Adamson acknowledges that the 2005 deed conveying the land to him and his wife depicted a sixty foot wide easement on the property. The easement was specifically identified as a sixty foot Commonwealth right of way. (Am. Countercl., Ex. 1.) Similarly, the deed to the contiguous property acquired by Adamson in 2007 designated a sixty foot Commonwealth right of way easement on the property. (*Id.*)

Adamson maintains that the easement begins at the eastern edge of his property and extends westward approximately forty feet. (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. A at 28:3–5, ECF No. 43.) Adamson, while aware of the sixty foot wide easements depicted on the 2005 and 2007 deed plats, maintains that he believes that they were a scrivener's error.[2] (Def.'s Mem. Support Mot. Summ. J., Ex. 4.) However, under Virginia Code Section 8.01-389(C), "recitals of any fact in a deed . . . of record conveying any interest in real property shall be prima facie evidence of that fact." *Id.*; see also *Ashworth v. Cole, et al.*, 180 Va. 108, 21 S.E.2d 778 (1942).

In 2007, Columbia, claiming the easement was sixty feet wide, notified Adamson that it intended to remove trees and other encroachments from the easement. Columbia's stated reason for the clearing was to enable aerial surveillance for leakage and damage

---

[2] The record provides no factual basis for Adamson's opinion, other than his observation of the cleared area at the time he purchased the land.

4

and to comply with federal regulations. (Def.'s Mem. Support Mot. Summ. J., Ex. 1 at ¶¶ 20–29, 33, 34(b), ECF No. 33 (hereinafter "Parrish Decl.").) Adamson declined to grant Columbia authority to enter his property claiming that the historically cleared area was approximately forty feet wide.[3] When Columbia initially appeared on Adamson's property to clear the easement area, Adamson summoned the Goochland County Sheriff who took no enforcement action.

On September 14, 2009, in the absence of Adamson and his wife, Columbia again entered their property and cleared an additional swath along the pipeline right of way area. Claiming the right to a sixty foot easement, Columbia cut approximately twenty feet of mature trees and underbrush. The resulting stumps were ground and removed from the property. In the aftermath of this clearing process, Adamson and his wife were deprived of privacy and screening which they maintain was critical to the quiet enjoyment of their property. This lawsuit followed seeking compensation to restore the felled tree line.

The standard of review for cross motions for summary judgment is well settled in the Fourth Circuit. In considering cross motions for summary judgment, a district court should "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999). Summary

---

[3] To support his position, Adamson cited the decision of the Goochland County Circuit Court in *Columbia Gas Transmission, LLC v. Robert R. Pounders and Doris Pounders*, No. CL09-159. The Goochland County Circuit Court established the width of the easement through the Pounders' property to be approximately thirty-eight feet.

judgment is appropriate only if the record shows "'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)).

The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Wash. Sport Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Id.*

Furthermore, to defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another," or the "mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d

188, 191 (1997) (citations omitted); *Anderson*, 477 U.S. at 252. Jurisdiction in this case is based on diversity. Therefore, this Court must decide the substantive issues as "[i]t believe[s] the Supreme Court of Virginia would decide were it faced with the issue." *Bryant Elec. Co., Inc. v. City of Fredericksburg*, 762 F.2d 1192, 1193 (4th Cir. 1985) (citation omitted).

Turning to the issues at hand, the analytical framework employed in construing an easement is well established in the Commonwealth of Virginia. As the Supreme Court of Virginia restated in *Anderson v. Delore*, "[i]n resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents." 278 Va. 251, 257, 683 S.E.2d 307, 309 (2009) (citing *Pyramid Dev., LLC v. D&J Assoc.*, 262 Va. 750, 754, 553 S.E.2d 725, 728 (2001)). Moreover, "the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source." *Hamlin v. Pandapas*, 197 Va. 659, 663–64, 90 S.E.2d 829, 833 (1956); *see also Pyramid Dev.*, 262 Va. at 754, 553 S.E.2d at 728.

The teachings of the Supreme Court of Virginia in *Anderson v. Delore* are particularly instructive with respect to the Agreement in the immediate case, specifically because the deed expressly creates an easement but fails to define its dimensions. "When this situation occurs, and the deed language does not state the object or purpose of the easement, the determination of the easement's scope 'is made by reference to the intention of the parties to the grant,' ascertained from the circumstances pertaining to the parties and the land at the time of the grant." 278 Va. at 257, 683 S.E.2d at 310 (quoting

7

*Waskey v. Lewis*, 224 Va. 206, 211, 294 S.E.2d 879, 881 (1982)); *accord Cushman Va. Corp. v. Barnes*, 204 Va. 245, 252, 129 S.E.2d 633, 649 (1963). However, importantly, the *Anderson* court further stressed that "if the granting language states the object or purpose of the easement, the dimensions of the easement may be inferred 'to be such as are reasonably sufficient for the accomplishment of that object.'" 278 Va. at 257, 683 S.E.2d at 310 (quoting *Hamlin*, 197 Va. at 664, 90 S.E.2d at 834).

Applying facets of the principles articulated in *Anderson v. Delore* and those cases from which it is a direct descendent, Adamson contends that this Court should focus on the original intent of the parties to the Agreement. He maintains that the best evidence of their intent is the dimensions of the original taking, which Adamson claims is approximately forty feet. Virginia courts typically look to the intent of the parties only when the easement lacks language specifying its purpose. *Cantrell v. Appalachian Power Co.*, 148 Va. 431, 435, 139 S.E. 247, 248 (1927). The only evidence of the actual intent of the parties to the easement grant, aside from the document itself, is the deed of conveyance from the McBrides to Partridge Hill. The attached plat clearly depicts a sixty foot easement.

In support of his position, Adamson draws heavily on the reasoning of the Supreme Court of Virginia in *Good v. Petticrew*, 165 Va. 526, 183 S.E. 217 (1936) and *Cushman*, 204 Va. 245, 129 S.E.2d 633. In those cases, the court observed that "where the width of a right of way is not specified in the grant, then it is limited to the width as it existed at the time of the grant." *Cushman*, 204 Va. at 252, 129 S.E.2d at 639 (quoting *Petticrew*, 165 Va. at 533, 183 S.E. at 219). This time honored principle governing

8

construction of deeds is correct in the abstract. *See Cushman*, 204 Va. at 252, 129 S.E.2d at 639. The Supreme Court of Virginia, however, appears to have limited the application of this rule to roadway easements with defined widths. "When, however, an instrument refers to and grants a right of way over an already existing road, the right of way is limited to the width of the road as it existed at the time of the grant." *Waskey*, 224 Va. at 211, 294 S.E.2d at 882 (citations omitted). Adamson's interpretation of the Agreement, however, envisions a static width which is inconsistent with the text of the Agreement.[4]

The argument advanced by Columbia, on the other hand, hues closely to the language of the Agreement. Columbia stresses that the Agreement entitled its predecessor to "la[y], maintain, operate and remove a pipe line, or pipe lines for the transportation of gas . . . with the right of ingress and egress to and from and through same." (Agreement.) Significantly, the Agreement also stated that "[t]he Grantee is further granted the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price mentioned for each additional line to be laid."[5] (*Id.*) Columbia argues that since the granting language of the Agreement states the specific object or purpose of the easement, its dimensions may be inferred to be that reasonably sufficient for the accomplishment of that object. Clearly, this language contemplates the possible installation of additional pipelines. The width

---

[4] Unlike the immediate case, the instrument creating the easements in *Good* and *Cushman* contained no language contemplating expansion of its width.

[5] The record is silent as to whether the McBrides received any form of additional compensation when the second pipeline, VM 109, was installed in 1992.

9

necessary to safely accommodate the additional pipelines would logically be determined at the time of installation, depending on the number installed.

To establish the width necessary to install, maintain and operate two parallel, high pressure natural gas pipelines, Columbia offered the expert testimony of Stanley Parrish ("Parrish"). Parrish, an engineer with thirty years of experience working in the natural gas transmission industry, stated that in his expert opinion, a sixty foot easement was necessary to fulfill the object of the easement.[6] (Parrish Decl. ¶¶ 2, 14, 16, 19, 21.) In his view, this width was necessary not only to safely access the pipelines for inspection, maintenance, repair or replacement,[7] but to comply with federal regulations. (Parrish Decl. ¶ 20.) As the United States Court of Appeals for the Sixth Circuit noted in *Andrews v. Columbia Gas Transmission Corp.*, "[t]he public interest requires that Columbia be able to repair and service natural gas pipelines as quickly, safely, and reasonably as possible." 544 F.3d 618, 629 (2008) (citations omitted).

Although Adamson disagrees with Parrish's opinion as well as his stated rationale, Adamson offers no counter-expert in rebuttal. Although Parrish conceded that he had not specifically reviewed the industry standards in effect in 1956 when the right of way was dedicated, he stated unequivocally that based on his training and thirty years of

---

[6] Columbia cites a line of cases holding that a width of fifty feet is required to maintain and operate a single natural gas pipeline. *Columbia Gas v. Perry*, 623 F. Supp. 2d 409, 413 (S.D.N.Y. 2008); *see also Columbia Gas v. Burke*, 768 F. Supp. 1167, 1172–73 (N.D. W. Va. 1990).

[7] Parrish also indicated that "[i]n the event that repair work cannot be performed while gas continues to flow through . . . the pipeline Columbia would also need to construct a temporary bypass line around the area to be repaired. (Parrish Decl. ¶ 15.)

experience, a sixty foot width had always been required.[8] (Parrish Decl. ¶ 34.) The installation, maintenance and operation of a natural gas pipeline is clearly beyond the ken of a lay witness.

In his rejoinder, Adamson also emphasizes that James Braford ("Braford"), the general manager of the contracting firm engaged to clear the trees, testified at his deposition that an employee of Columbia stated that the original easement was only forty feet wide. (Pl.'s Reply Br., Ex. G at 28:13–15, ECF No. 54.) However, Braford also testified that an additional twenty feet was added to the original forty feet when the VM 109 pipeline was installed in 1992. (*Id.* at 28:16–22.) "Told us the original was 40 and then they came back and purchased an extra 20." (*Id.* at 67:2–3.) Richard Charvet, who is responsible for locating, measuring and marking right of ways for Columbia, confirmed in his declaration that he instructed Braford's crew "that the Easement to be cleared on [Adamson's] Property was 60 feet wide." (Chavert Decl. ¶ 14.) Chavert, however, denies ever telling Braford that the easement was originally forty feet. (*Id.*)

Adamson urges the Court to adopt the notion that the parties intended for its width to remain as it existed at the time of the grant.[9] Columbia points out that this interpretation is at odds with the language granting "the right at any time to lay additional

---

[8] Adamson also contends that Parrish admitted during his deposition that if the easement was limited to forty feet, as Plaintiff urges, Columbia could adopt expedient measures to service the pipelines. While Parrish acknowledged that these measures could be used if necessary, he hastened to add they would be ill-advised and too time consuming in an emergency. (Parrish Tr. 59:20–60:8.) Parrish further concluded that sixty feet would be required to access and service both pipelines. (Parrish Decl. ¶¶ 14–21.) For example, leakage from an unidentified line could require exposure of both lines to determine the source of the leak. (*Id.*)

[9] Under the theory of construction suggested by Plaintiff, the width of the easement would remain constant regardless of the number of pipelines installed.

11

lines of pipe approximately parallel to the first line herein provided . . . ." (Agreement.) Moreover, Adamson has offered no probative evidence of the original 1957 clearing and only scant, somewhat impressionistic, evidence of the extent of the 1992 taking.

To further reinforce his argument, Adamson draws the Court's attention to an opinion of the Circuit Court of Goochland County, *Columbia Gas Transmission, LLC v. Pounders*, No. CL09-159.[10] In *Pounders*, the state court, based on the evidence before it, established the width of the easement on Adamson's neighbor's property to be approximately thirty-eight feet. While the two easements have a similar genesis, they involve different parties, tracts of land and a divergent analytical approach by the trial court. The decision in *Pounders* is informative but unpersuasive on the record currently before this Court.

In the final analysis, this Court must conclude that Columbia holds the stronger hand. Its interpretation of the Agreement squares with long standing Virginia law and is supported by the admissible evidence. Columbia's theory of construction is consistent with the limited evidence before this Court, as well as the apparent intent of the parties. Even if the original Agreement contemplated a forty foot easement, the plat attached to the deed of conveyance to Partridge Hills, following the installation of the second pipeline, clearly reflected a sixty foot easement. Adamson's deed mirrored these dimensions.

---

[10] The Supreme Court of Virginia's refusal to grant Columbia's petition for appeal adds little precedential value to the opinion. *Asplundh Tree Experts Co. v. Pacific Employers & Ins. Co.*, 269 Va. 399, 407 n.7, 611 S.E.2d 531, 535 n.7 (2005); *see also Sheets v. Castle*, 263 Va. 407, 411–12, 559 S.E.2d 616, 619 (2002).

12

This Court finds that an easement of sixty feet comports with industry standards, complies with federal regulations, and is reasonably necessary to safely maintain and service two high pressure natural gas pipelines.

Turning next to Adamson's claim of unauthorized entry, this cause of action turns on whether Columbia's clearing of trees and other natural growth was permitted under the Agreement.[11] An easement establishes "a privilege to use the land of another in a particular manner and for a particular purpose." *Brown v. Haley*, 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987). Parrish stated in his declaration that trees, particularly the root structure, interfere with the safe maintenance of the pipeline. (Parrish Decl. ¶¶ 31–32.) He also explained that encroachments can hinder aerial patrols used to detect leaks and hazards. (*Id.* ¶ 27.)

The Court having found that Columbia has a sixty foot easement, Columbia was entitled to remove encroachments in the easement to safeguard the pipeline. Columbia's entry on the Adamson property was therefore lawful and within the limitations of the grant. *Lynchburg*, 166 Va. at 359, 186 S.E. at 54; *Cantrell*, 148 Va. at 435, 139 S.E. at 248.

For the foregoing reasons, Columbia's Motion for Summary Judgment on their petition for declaratory relief and Motion to Dismiss Adamson's claim of trespass will be granted. Conversely, Adamson's Motion for Summary Judgment will be denied.

---

[11] Trespass, as alleged by Adamson, "is an unauthorized entry onto property which results in interference with the property owner's possessory interest." *D.J. Cooper, et al. v. Horn, et al.*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994).

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                      Henry E. Hudson
                                      United States District Judge

Dated: Nov. 13, 2013
Richmond, Virginia